30 U.S. 190 (____)
5 Pet. 190
EX PARTE NATHANIEL CRANE AND SAMUEL KELLY.
IN THE MATTER OF JAMES JACKSON, EX DEM. OF JOHN JACOB ASTOR AND OTHERS
vs.
NATHANIEL CRANE AND
JAMES JACKSON, EX DEM. OF JOHN JACOB ASTOR AND OTHERS
vs.
SAMUEL KELLY.
Supreme Court of United States.

*191 The case was submitted to the court, without argument, by Mr Hoffman and Mr Webster for the relators, and by Mr Ogden and Mr Wirt for the plaintiffs in the circuit court.
Mr Chief Justice MARSHALL delivered the opinion of the Court.
These suits were decided in the court of the United States for the second circuit and southern district of New York, in May term 1830. At the trial the court gave opinions on several points of law, which were noted at the time, and a right to except to them reserved. According to the practice in New York, bills of exceptions were prepared by counsel in vacation, and tendered to the circuit judge for his signature. The bills comprehend not only the points of law made at the trial, but the entire charge to the jury. The judge corrected the bills by striking out his charge to the jury. This motion *192 is made for a writ of mandamus "to be directed to the circuit court of the United States for the southern district of New York in the second circuit, commanding the said circuit court to review its settlement of the proposed bills of exceptions," "and to correct, settle, allow and insert, in the said bills, the charge delivered to the said jury in each case, or the substance thereof."
A doubt has been suggested respecting the power of the court to issue this writ. The question was not discussed at the bar, but has been considered by the judges. It is proper that it should be settled, and the opinion of the court announced. We have determined that the power exists. Without going extensively into this subject, we think it proper to state, briefly, the foundation of our opinion.
In England the writ of mandamus is defined to be a command issuing in the king's name, from the court of king's bench, and directed to any person, corporation, or inferior court of judicature within the king's dominions, requiring them to do some particular thing therein specified, which appertains to their office and duty, and which the court of king's bench has previously determined, or at least supposes to be consonant to right and justice. Blackstone adds, "that it issues to the judges of any inferior court, commanding them to do justice according to the powers of their office, whenever the same is delayed. For it is the peculiar business of the court of king's bench to superintend all other inferior tribunals, and therein to enforce the due exercise of those judicial or ministerial powers with which the crown or legislature have invested them: and this, not only by restraining their excesses, but also by quickening their negligence, and obviating their denial of justice." 3 Bl. Com.
It is, we think, apparent that this definition, and this description of the purposes to which it is applicable by the court of king's bench, as supervising the conduct of all inferior tribunals, extends to the case of a refusal by an inferior court to sign a bill of exceptions, when it is an act which "appertains to their office and duty," and which the court of king's bench supposes "to be consonant to right and justice." Yet we do not find a case in which the writ has issued from that *193 court. It has rarely issued from any court; but there are instances of its being sued out of the court of chancery, and its form is given in the register. It is a mandatory writ commanding the judge to seal it, if the fact alleged be truly stated: "si ita est."
There is some difficulty in accounting for the fact, that no mandamus has ever issued from the court of king's bench, directing the justice of an inferior court to sign a bill of exceptions. As the court of chancery was the great officina brevium of the kingdom, and the language of the statute of Westminster the second was understood as requiring the king's writ to the justice, the application to that court for the writ might be supposed proper. In 1 Sch. and Lef. 75, the chancellor superseded a writ which had been issued by the cursitor, on application; declaring that it could be granted only by order of the court. He appears, however, to have entertained no doubt of his power to award the writ on motion. Although the course seems to have been to apply to the chancellor, it has never been determined that a mandamus to sign a bill of exceptions may not be granted by the court of king's bench.
It is said by counsel in argument in Bridgman vs. Holt, Show. P.C. 122, that by the statute of Westminster the second, ch. 31, in case the judge refuses, then a writ to command him, which is to issue out of chancery, quod apponat sigillum suum. The party grieved by denial, may have a writ upon the statute commanding the same to be done, &c. "That the law is thus, seems plain, though no precedent can be shown for such a writ: it is only for this reason, because no judge did ever refuse to seal a bill of exceptions; and none was ever refused, because none was ever tendered like this, so artificial and groundless."
The judicial act, sect. 13, enacts, that the supreme court shall have power to issue writs of prohibition to the district courts when proceeding as courts of admiralty and maritime jurisdiction; and writs of mandamus in cases warranted by the principles and usages of law, to any courts appointed, or persons holding offices under the authority of the United States. A mandamus to an officer is held to be the exercise of original jurisdiction; but a mandamus to an inferior court of the United States, is in the nature of appellate jurisdiction. *194 A bill of exceptions is a mode of placing the law of the case on a record, which is to be brought before this court by a writ of error.
That a mandamus to sign a bill of exceptions is "warranted by the principles and usages of law," is, we think satisfactorily proved by the fact that it is given in England by statute; for the writ given by the statute of Westminster the second, is so in fact, and is so termed in the books. The judicial act speaks of usages of law generally, not merely of common law. In England it is awarded by the chancellor; but in the United States it is conferred expressly on this court, which exercises both common law and chancery powers; is invested with appellate power; and exercises extensive control over all the courts of the United States. We cannot perceive a reason why the single case of a refusal by an inferior court to sign a bill of exceptions, and thus to place the law of the case on the record, should be withdrawn from that general power to issue writs of mandamus to inferior courts, which is conferred by statute.
In New York, where a statute exists similar to that of Westminster the second, an application was made to the supreme court for a mandamus to an inferior court to amend a bill of exceptions according to the truth of the case. The court treated the special writ given by the statute as a mandamus, and declared that it was so considered in England; and added, that "though no instance appears of such a writ issuing out of the king's bench, where an inferior court refused to seal a bill of exceptions, there is no case denying to that court the power to award the writ." "It ought to be used where the law has established no specific remedy, and where in justice and good government there ought to be one." "There is no reason why the awarding of this particular writ does not fall within the jurisdiction of this court, or why it should be exclusively confined to the court of chancery."
In the opinion then of the very respectable court, which decided the motion made for a mandamus in Sikes vs. Ransom, 6 Johns. Rep. 279, the supreme court of New York possesses the power to issue this writ, in virtue of its general superintendence of inferior tribunals. The judicial act confers the power expressly on this court. No other tribunal exists by which it can be exercised.
*195 We proceed to the inquiry whether a proper case has been made out, on which the writ ought to be issued.
The affidavit of Mr Bronson, the attorney for the defendants in the circuit court, is the evidence on which the motion is to be sustained. He says "that the suits were tried on a full understanding, that each party was to be considered as excepting to any decision or opinion of the said court which he might desire to review on a writ of error, whether such exception was formally announced at the trial or not; and it was also fully understood, in the event of verdicts for the plaintiff, that the deponent would, after the trials, prepare bills of exception, and carry the cases by writs of error to the supreme court of the United States." The charge of the judge was formally excepted to in one of the cases, before the jury left the bar.
In the case of Nathaniel Crane, the counsel for each party submitted certain written points or questions of law for the decision of the court, which were decided: after which the presiding judge delivered a charge to the jury, in which he went at large into the law and facts of the case.
In the case of Samuel Kelly, the counsel for the defendant submitted certain legal questions growing out of the facts of the case, and requested the court to decide them before the cause should be argued to the jury; to the end that he might know what questions would be left to the jury. This was not done, and the cause was argued; after which the court delivered its opinion on the said questions of law, and then the presiding judge delivered a charge on the law and facts of the case. That in each case the decision of the proposed points of law consisted, as to most of the questions, in giving an affirmative or negative answer to the propositions; but in the charge subsequently delivered in each case, the judge went at large into the law of the cases, and commented upon it to an extent and in a manner much more likely to impress the minds of the jury, than in the brief answers previously given. That in the judgment of the deponent, the remarks of the judge in his charge, did in effect present the law of the case to the jury differently from what it had been given to them in answer to some of the points submitted; and in such a manner that a full and fair review of the judgments of the circuit court cannot be had without putting the charge in each case upon the record. *196 He therefore, in each case, inserted the substance of the charge in the bill of exceptions. That in the charge the remarks of the judge upon the law and facts of each case were so blended, that the deponent did not, and does not believe it practicable to separate the remarks upon the law from those upon the facts of the case, in such a manner as to give the defendants a full and fair opportunity to review the judgments of the circuit court.
The bills of exceptions, which had been offered in December to the presiding judge for his signature, were returned; the whole of the charge in each case being stricken out.
The subject was again brought before the judge, who returned the following answer to the application.
"Dear Sir:  I have read the letter you put into my hands this morning, which you had received from Mr Bronson, in relation to the bills of exceptions in the Astor causes. The charge, as contained in the bills of exceptions, was stricken out in conformity to what I understand to be the rule laid down in the supreme court in the case of Carver. It purports to set out at length the whole charge (how far this is correctly done, I do not stop to inquire); which I understand the supreme court to say is a practice they decidedly disapprove. There can be no doubt that a party is entitled to his exception, if he sees fit to take one, upon every question of law stated to the jury. I have not the bill of exceptions now before me. I am not aware of any question of law arising upon the charge, which is not embraced within some one of the points specifically submitted to the court, and upon which the court gave an opinion: all which are contained in the bill of exceptions. If this is not the case, and it is pointed out, it ought to be added to the bill of exceptions, and I will again look at it. But the exception must be confined to some matter of law."
The counsel for the defendants still insisted that the whole scope and bearing of the charge, rather than any particular expression in it, tended to lead the jury to a different result from what they would have been likely to attain from the law, as laid down in answer to the points made at the bar. He designed to complain, that "though it may not in terms have departed from the instructions given in answer to those points, yet it did so in effect."
*197 The judge still refusing to sign the bill of exceptions containing the whole charge, this motion is made.
The affidavit of Mr Lord, counsel for the plaintiff in the circuit court, is also exhibited. He states the proceedings at the trial. The counsel for the defendants requested the opinion of the court on various propositions of law, "and the court did then and there, in presence of the jury and of counsel, pronounce distinctly its opinion and decision upon every such proposition;" after which the judge proceeded to charge the jury on the evidence. After the conclusion of his remarks, in the case against Crane, some discussion arose between the defendants' counsel and the court, in presence of the jury, in which some passages of the charge appearing not to have been rightly understood by the defendants' counsel, or not to have been clearly stated; the court again stated to the jury its charge on the points thus stated anew.
The bills of exceptions, prepared by the counsel for the defendants, were submitted to the deponent as counsel for the plaintiff, who objected to the insertion of the charge, and stated his reasons for the objection. The counsel on both sides attended the judge, who said, "that he considered that which in the bills of exceptions is called the charge, and which purports to contain all the remarks of the judge on the evidence, improper to be inserted in the bills of exceptions, and not permitted by law or the practice of the court; that it was incumbent on the party excepting, to specify the matters of law complained of, and that if any thing could be specified, which was not expressed in the decisions aforesaid of the points submitted (which decisions are stated in the bills of exceptions), he would allow the same to be inserted in the bills of exceptions; but if that were not done, he should allow the amendment of the plaintiff, and the statement called the charge, to be struck out."
The judge then was willing to allow exceptions to his opinions on the questions of law which were made in the cause. He was also willing to sign exceptions to any matter of law advanced by him to the jury, which was not contained in the points reserved at the trial. The counsel for the defendants insisted on spreading the whole charge upon the record.
*198 It appears to be customary in New York, as in several other states, for the judge, after the arguments are closed, to sum up the evidence at length to the jury, and to state the law applicable to facts; leaving it to the jury, however, to decide what facts that evidence proved. Such a charge must necessarily consist chiefly of a compendium of the testimony. To spread the charge upon the record, is to bring before the appellate court the view taken by the judge of the testimony given to the jury. If any law was mixed with this summary of evidence, the right of either party to except is admitted. The question is whether an exception is allowable which brings before the superior court so much of the charge as relates to evidence.
In Carver's case, 4 Peters, 80, this court said, "we take this occasion to express our decided disapprobation of the practice (which seems of late to have gained ground) of bringing the charge of the court below, at length, before this court for review. It is an unauthorized practice, and extremely inconvenient both to the inferior and to the appellate court. With the charge of the court to the jury, upon mere matters of fact, and with its commentaries upon the weight of evidence, this court has nothing to do. Observations of that nature are understood to be addressed to the jury, merely for their consideration, as the ultimate judges of matters of fact; and are entitled to no more weight or importance, than the jury in the exercise of their own judgment choose to give them. They neither are, nor are they understood to be binding upon them, as the true and conclusive exposition of the evidence. If indeed, in the summing up, the court should mistake the law, that justly furnishes a ground for an exception; but the exception should be strictly confined to that mis-statement: and by being made known at the moment, would often enable the court to correct an erroneous expression, or to explain or qualify it in such a manner as to make it wholly unexceptionable, or perfectly distinct. We trust, therefore, that this court will hereafter be spared the necessity of examining the general bearing of such charges."
After such an expression of the opinion of this court, it could not be expected that a judge on his circuits would so *199 utterly disregard it, as to allow an exception to his whole charge. If, however, the opinion be unsupported by law, it ought to be reconsidered and reversed.
At common law, a writ of error lay for error in law apparent on the record, but not for an error in law not apparent on the record. If a party alleged any matter of law at the trial, and was overruled by the judge, he was without redress, the error not appearing on the record. 2 Inst. 42. To remedy this evil the statute was passed, which gives the bill of exceptions. It is to correct an error in law. Blackstone, speaking of this subject, says, "and if either in his directions or decisions, he (the judge) mistakes the law by ignorance, inadvertence or design, the counsel on either side may require him publicly to seal a bill of exceptions, stating the point wherein he is supposed to err." "This bill of exceptions is in the nature of an appeal." 2 Blackstone, 372.
It is also stated in the books, that a bill of exceptions ought to be upon some point of law either in admitting or denying evidence, or a challenge on some matter of law arising upon a fact not denied, in which either party is overruled by the court. A bill of exceptions is not to draw the whole matter into examination again; it is only for a single point, and the truth of it can never be doubted after the bill is sealed. The judges in Bridgman vs. Holt, speaking of evidence to be left to a jury, say; but no bill of exceptions will lie in such a case by the statute when the evidence is admitted and left to the jury. Show. P.C. 120. Bul. Nisi Prius, 316. Bac. Abr. tit. Bill of Exceptions.
If an exception may be taken in such form as to bring the whole charge of the judge before the court, a charge in which he not only states the results of law from the facts, but sums up all the evidence, the exception will not be on a single point; it will not bring up some matter of law arising upon a fact not denied: it will draw the whole matter into examination again.
The affidavit in support of the motion gives us the strongest reason for the course the mover has pursued, that the remarks of the judge upon the law and facts were so blended, that it was believed to be impracticable to separate the remarks upon the law from those upon the facts of the case, in such a *200 manner as to give the defendants a full and fair opportunity to review the judgment of the circuit court.
The difficulty, then, which appeared to the counsel to be insurmountable, must be overcome by this court. We must perform the impracticable task of separating the remarks on the law from those on the facts of the case, and thus draw the whole matter into examination again.
The inconvenience of this practice has been seriously felt and has been seriously disapproved. We think it irregular and improper. The motion is denied.
Mr Justice BALDWIN dissenting.
The common law definition of a mandamus, which is adopted in this court, is, "a command issuing in the king's name, from the court of king's bench, and directed to any person, corporation, or inferior court of judicature within the king's dominion, requiring them to do some particular thing therein specified, which appertains to their office or duty, and which the court of king's bench has previously determined, or at least supposes to be consonant to right and justice." Marbury vs. Madison, 1 Cranch, 168.
As the first question which this motion presents is one of the jurisdiction and power of this court to grant the writ prayed for in this case, it will be following the rule established to consider it first (3 Cranch, 172, 1 Peters's Condensed Reports, 159; 5 Cranch, 221; 10 Wheaton, 20; 1 Cranch, 91; 9 Wheaton, 816): a rule which never ought to be disregarded, where a question of power arises.
Though the question of jurisdiction may not be raised by counsel, it can never escape the attention of the court; for it is one which goes to the foundation of their authority, to take judicial cognizance of the case, if they cannot in the appropriate language of the law hear and determine it. The cause is coram non judice, and every act done is a nullity. If I take this case into judicial consideration, this is an assumption of jurisdiction that necessarily results from a decision whether this is or is not a proper case for a mandamus; for the court hear and determine the motion on its merits. Their refusal to grant the motion is not on the ground that they have not power to consider it, but that on consideration they reject it. *201 This is as much an exercise of jurisdiction as to issue the writ; as by examining the grounds of the motion the court assume the power to decide on it, as the justice of the question may seem to require. In my opinion, no new question of jurisdiction ought to be acted on without an inquiry into the power of this court to grant the motion, or to issue the process. The silent uncontested exercise of jurisdiction may induce the profession to claim it as a right founded on precedent, though the judgment of the court may never have been given on the question of power, or their intention have been drawn to it by the counsel. If then process should issue improvidently, and the court should find itself called upon for the first time to examine its jurisdiction and power to issue it; when obedience should be refused by the court to which it was directed, and the question came before us on this return: "the court is unanimously of opinion that the appellate power of the supreme court of the United States does not extend to this court under a sound construction of the constitution of the United States: that the writ of mandamus in this case was improvidently issued under the authority of the twenty-fifth section of the judiciary act of 1789: that the proceedings thereon in the supreme court were coram non judice in relation to this court, and that obedience to its mandate be declined by the court:" this court would find itself in a very unenviable predicament, if, on a careful revision of the constitution and laws, they should be compelled to sanction the open contempt of their process or decree, by an inferior court, to whom an order had been sent from this high tribunal, which it found itself forced to declare null and void. It is hard to say which would be most fatal to its influence and authority, the example or the consequences.
The judicial history of this court presents one instance of such a return on its records, and another in which the military force of a state was in actual array in obedience to a law for opposing the execution of a mandate; and a very recent occurrence might have furnished a third incident, had not a writ of error abated by the death of the party suing it out.
The proceedings which have attended the assertion of the unquestionable jurisdiction of the court over cases which, after having been discussed and considered in all their bearings, *202 have been solemnly decided, afford no uncertain indication of the results to be expected from the exercise of their power without discussion or inquiry into its existence, and over subjects on which it may, on examination, be found incapable of acting.
When questions of jurisdiction arise, they must be settled by a reference to the constitution and acts of congress. All cases embraced within the judicial power of the government are capable of being acted upon by the courts of the union. Those on which the original jurisdiction of this court can be exercised are defined and cannot be enlarged. 6 Wheat. 395, 396, 399. It has no inherent authority to assume it over any others, and congress are incapable of conferring it by law. 1 Cranch, 173. Where the constitution has declared the jurisdiction shall be original, congress cannot give it in its appellate form, and vice versa. Marbury vs. Madison, 1 Cranch, 174. 1 Peters's Condensed Reports, 267. 6 Wheaton 399. 9 Wheaton, 820, 821.
Though the courts of the United States are capable of exercising the whole judicial power as conferred by the constitution; and though congress are bound to provide by law for its exercise in all cases to which that judicial power extends; yet it has not been done, and much of it remains dormant for the want of legislation to enable the courts to exercise it, it having been repeatedly and uniformly decided by this court, that legislative provisions are indispensable to give effect to a power, to bring into action the constitutional jurisdiction of the supreme and inferior courts. 5 Cranch, 500, 2 Condensed Reports, 588, 589. 1 Wheaton, 337. 6 Wheaton, 375, 604. 9 Wheaton, 819, 820, 821. 12 Wheaton, 117, 118.
These principles remain unquestioned. They have long been settled as the judicial exposition of the constitution on solemn argument and the gravest consideration; and they are binding on all courts and judges. I shall ever be found among the last to oppose my opinion in opposition to the results of the deliberate judgment of the highest judicial tribunal, when thus formed. They bind my faith, even though the reasons assigned might not carry conviction to my understanding. We must respect the solemn decisions of our predecessors and associates, as we may wish that those who succeed us should respect ours; or the supreme law of the land, so far as depends *203 on judicial interpretation, will change with the change of judges. There may be exceptions to this rule. When they do occur, my hope is, that my reasons for a departure will be found in the great principles of the government, which meet with general assent in their adoption, though the most able and upright may differ in their application. But in any cases which have arisen or may arise, in which the jurisdiction and power of this court over the subject matter of the parties is not questioned by counsel and deliberately considered by the judges, or should be unnoticed in the opinion of the court, I cannot acknowledge it as an authority affording a rule for my decision, or a guide to my judgment. Such a decision ought neither to control my reason or settled conviction of pre-existing rules and principles of law.
These remarks are deemed proper, as there are some cases in which writs of mandamus have been issued under circumstances such as have been referred to, or refused on the merits; but "the question of jurisdiction was not moved, and still remains open," according to the rule laid down by this court in Durousseau vs. The United States, 6 Cranch, 307, on a question whether a writ of error could issue from the supreme court to the district court of Orleans: and by the chief justice, in alluding to the case of The United States vs. Sims, 1 Cranch, 252, "no question was made in that case as to the jurisdiction; it passed sub silentio, and the court does not consider itself as bound by that case." 6 Cranch, 172.
These are the principles on which I shall examine the question of jurisdiction. The first inquiry then will be, has this court by law the power to issue a mandamus to a circuit court to sign a bill of exceptions, under the thirteenth and fourteenth sections of the judiciary act, which have been relied on as authorizing it? So far as this act gives the power to issue a mandamus to executive officers, they have solemnly declared the law to be unconstitutional and void, and that the power does not exist. It being considered by the court to be an exercise of original jurisdiction, it remains to inquire whether it can be issued, to any courts appointed under the authority of the United States; and if so, in what cases.
This power is defined in Marbury vs. Madison, 1 Cranch, 175, in these words: "to enable this court, then, to issue a *204 mandamus, it must be shown to be an exercise of appellate jurisdiction, or to be necessary to the exercise of appellate jurisdiction. It is the essential criterion of appellate jurisdiction, that it revises and corrects the proceedings in a cause already instituted, and does not create that cause." In the United States vs. Schooner Peggy, 1 Cranch, 110, we are furnished with this as the judicial definition: "it is in the general true that the province of an appellate court is only to inquire whether a judgment when rendered is erroneous or not." That case furnished an exception in these words: "but if subsequent to the judgment, and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed or its obligation be denied." In M'Cluney vs. Silliman they lay down the same rule: "the question before an appellate court is, was the judgment correct, not the ground on which the judgment professes to proceed." 6 Wheaton, 603. Appellate jurisdiction being thus defined; its source can only be found in the constitution which confers it, both as to law and fact, with such exceptions and under such regulations as the congress shall make, (1 Laws U.S. 68), and the judiciary act which makes these exceptions and regulations. The thirteenth section provides that the supreme court shall have appellate jurisdiction from the circuit courts, and the courts of the several states in the cases hereafter specially provided for. These are defined in the twenty-second section, as to the circuit courts, and in the twenty-fifth section, as to the state courts. 2 Laws U.S. 64, 65.
This court, from its first organization until this time, have held that this enumeration of the cases in which it had appellate jurisdiction, was an exclusion of all others. 1 Cranch, 174, 175, 176; 3 Cranch, 172; The United States vs. Moore, 6 Cranch 313, 314, 318; 7 Cranch, 32, 44, 287, 108, 110; 6 Wheaton. 603; 9 Wheaton, 820, 821, 19; 12 Wheaton, 131, 132, 133, 203. The general principle the court have acted on is this: "that they imply a legislative exception from its appellate constitutional power in the legislative affirmative description of these powers." 6 Cranch, 314. But if the appellate jurisdiction of this court is described in general terms, so as to comprehend the case, and there is no exception or regulation which would exclude it from its general provisions *205 (as in Wilson vs. Mason, 1 Cranch, 91, which was a writ of error to the district court of Kentucky, on cross caveats, for the same tract of land): or if it was the obvious intention of the legislature to give the power, and congress have not excepted it, as on the question which arose in the case of Durousseau (6 Cranch, 312, 318), whether this court could issue a writ of error to the district court of Orleans, they declared it "to be the intent of the legislature to place those courts precisely on the footing of the court of Kentucky in every respect, and to subject their judgments in the same manner to the revision of the supreme court," and therefore gave the law of 1804 (page 809) a liberal construction. Cohens vs. Virginia, 6 Wheaton, 400, S.P.
But where the law of 1803 authorized a writ of error from the circuit to the district court, and omitted to provide one from this court to the circuit court, it was held not to be within its appellate jurisdiction (The United States vs. Goodwin, 7 Cranch, 108 to 110), though the law giving this jurisdiction to the circuit court authorized appeals to the supreme court from the circuit court from all final decrees and judgments rendered or to be rendered in any circuit court, or any district court having circuit court jurisdiction, in any cases of equity, or admiralty, or maritime jurisdiction, prize or no prize, where the sum in controversy exceeds two thousand dollars (3 Laws U.S. 561): and the twenty-second section of the judiciary act authorized it on judgments of the circuit court in civil actions, in cases removed there by appeal from the district courts. This too was an action of debt, and the sum in controversy fifteen thousand dollars; but it being on a writ of error from the circuit court, and not an appeal in the words of the twenty-second section, this court gave it is literal construction, which had been settled in the case of Wischart vs. Dauchy, cited by judge Washington in delivering the opinion of this court in Goodwin's case. "An appeal is a civil law process, and removes the cause entirely, both as to law and fact, to a review and new trial. A writ of error is a common law process, and removes nothing for a re-examination but the law." This statute observes this distinction. 7 Cranch, 110, 111 3 Dallas, 324, 1 Condensed Reports, 144.
These seem to me to be the only two cases in which the *206 appellate jurisdiction of the supreme court can be exercised; appeals and writs of error. This corresponds with the definition given by the court itself, as to its own powers, and the strict construction which they have (with the two excepted cases) given to the twenty-second and twenty-fifth sections, which are in their terms confined to final judgments and decrees of circuit and state courts, and these are the only cases, where this court have ever exercised appellate jurisdiction. They have uniformly refused where the judgment or decree was not final, (3 Wheat. 434, 601. 6 Wheat. 603. 12 Wheat. 135); and it cannot well be contended, that a refusal of a circuit court to sign a bill of exceptions is a final judgment or decree, or that it partakes in any degree of the character of either. The jurisdiction of circuit courts, over causes removed from state courts is considered as appellate. But the time, the process, and the manner, must be subject to the absolute legislative control of congress. 12 Wheat. 349. The same may be said of the jurisdiction of this court over causes sent from the circuit court, on a certificate of division; but this is by a special provision of the law of 1802, 3 Laws U.S. 482, which has been construed with the same strictness as the act of 1789. 6 Wheat. 547. 10 Wheat. 20. 12 Wheat. 132. 6 Wheat. 363, 368.
The writ of mandamus contains no order to remove a cause or any proceedings therein to the court issuing it, nor has it that effect. The cause remains in the court below, whether the writ be obeyed or not; the sole object being to compel them to act on the matter themselves, not to remove it for revision. That can only be done by writ of error or appeal. These considerations make it evident that the issuing a mandamus is not only not an exercise of appellate jurisdiction, but wholly different in its nature, object and effect.
It was so considered in this court, in the case of M'Intire vs. Wood, 7 Cranch, 499, 500, 2 Cond. Rep. 588; in which it was decided "that the power of the circuit court to issue the writ of mandamus is confined exclusively to those cases, in which it may be necessary to the exercise of their jurisdiction," and that cannot be the exercise of appellate jurisdiction; which in this case, and in Marbury and Madison, the court consider as a case wholly distinct. A mandamus being a writ to compel *207 the performance of a ministerial act by a judicial officer, is not, and cannot be a subject matter for the cognizance of an appellate court, which acts only on the judicial acts, the judgment, and the decrees of inferior courts. In the United States vs. Lawrence, 3 Dallas, 42, 45, 43, it was unanimously decided, that this court could not issue a mandamus to a district judge, acting in a judicial capacity; that they had no power to compel a judge to decide according to any judgment but his own. So in 1 Cranch, 171, "where the head of a department acts in a case in which executive discretion is to be exercised, in which he is the mere organ of executive will, it is again repeated that any application to control in any respect his conduct would be rejected without hesitation. In M'Cluny vs. Silliman, it was determined that this court had not jurisdiction to issue this writ to the register of a land office, where it had been refused by the highest court of the state in which it was located; and in the same case in 6 Wheaton, 598, it was distinctly decided, that the power existed neither in the circuit or supreme court; and all the principles herein stated were reaffirmed and finally settled. If judicial authority is to be respected, it is useless to pursue this branch of the inquiry any further.
I think then that the issuing of a mandamus by this, or a circuit court, is not an exercise of appellate jurisdiction. There seems to be no judicial opinion in favour of the affirmative of the proposition, and the cases referred to have been decided in the true construction of the thirteenth section of the judiciary act, which declares, "that the supreme court shall have appellate jurisdiction from the circuit courts of the several states, in cases specially hereinafter provided for." This is a distinct clause, and does not include the power to issue a mandamus, as an act of appellate jurisdiction.
The next clause giving this power is, "and shall have power to issue writs of prohibition to the district courts, when proceeding as courts of admiralty and maritime jurisdiction, and writs of mandamus in cases warranted by the principles and usages of law to any courts appointed or persons holding office under the authority of the United States." This is an express declaration of congress, that the power of this court to issue a mandamus is not conferred as appellate jurisdiction in the *208 cases specially provided for in the subsequent part of the law, but only in cases warranted by legal principles and usages, not referring to the constitution and laws of congress, but, as will appear hereafter, to the principles and usages of courts of common law. For it cannot be the sound construction of this section, that the power to issue a mandamus in a case not mentioned in the law, can be raised by implication in a case not within the express power given in a subsequent clause of the same section.
The issuing this writ not then being an act of appellate jurisdiction, I now come to the examination of the second branch of the proposition laid down by the court in Marbury vs. Madison.
Is the issuing of this writ within the fourteenth section of the judiciary act; which provides "that all the before mentioned courts of the United States shall have power to issue writs of scire facias, habeas corpus, and all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the principles and usages of law." The words and evident meaning of this law carry its construction on its face. It enumerates two writs, but does not mention a mandamus. The reason is obvious; that had been provided for in the preceding section: congress could not have foreseen, in 1789, that any part of their legislation on the subject of mandamus would have been declared unconstitutional and void in 1803, and the decision in Marbury and Madison can have no bearing on the fourteenth section. It must be construed as if the powers conferred in the preceding section had been constitutional, and in full exercise by this court to the extent named in the law: that is to every court appointed, and to all persons holding office under the authority of the United States, in all cases warranted by the usages and principles of law. This is certainly an express and plenary power, ample to embrace a case where the power was necessary to exercise the jurisdiction of this court. It took away the necessity of a mandamus, under the power given in the fourteenth section, and left it without any application to such a case as the present, if the mandamus was warranted by the principles and usages of law, and if it was not so warranted, then it is excluded by this section. *209 Besides, the thirteenth section gives the power expressly to issue this writ by name; the fourteenth gives it only by implication. I do not feel at liberty to reject a power expressly delegated, and seek for one by mere implication and construction, taken from a subsequent part of the same law; without a violation of the well settled principles of construing statutes and the very words of this. The authority to issue any other writs than fieri facias and habeas corpus is confined to those "not specially provided for by statute;" a mandamus was provided for by the preceeding section of the same statute, and therefore was not within this authority. The same rule of construction which this court has applied to the thirteenth must be carried to the fourteenth section; and the grant of an affirmative power in a specified case or class of cases excludes all others, according to the cases before cited.
Construing these two sections then as if the power conferred by both were valid, it is apparent that the fourteenth section could not have been intended to embrace a mandamus to a court of the United States: the very case provided for by that part of the thirteenth section, which has never been declared unconstitutional. It thus appears clearly to my mind, that the decisions of this court and the act of 1789 negative both parts of the proposition, which is laid down in 1 Cranch, 175, as necessary to make out a power in this court to issue a mandamus to a court of the United States. But, if the affirmative of this proposition is admitted, the law requires something more. The power does not arise unless in cases warranted by the principles and usages of law. Is this such a case?
This court has repeatedly declared their sense of the meaning of these terms in acts of congress, organizing and conferring powers upon the federal courts. They do not apply to the usages, principles and practice of the state courts, but to those of common law, equity and admiralty jurisdiction of England. There was an obvious reason for this: most of the states had a local common law. The English common law was a system which was intended to be applied to the exercise of the judicial power of the courts of the union, who were vested with an appellate jurisdiction over the highest courts of every state, and the necessity is obvious of proceeding according *210 to uniform principles and usages well known and defined on the subject of its powers and jurisdiction. Bodley vs. Taylor, 5 Cranch, 222. Robinson vs. Campbell, 3 Wheat. 222. Ex parte Kearney, 7 Wheat. 45. Fullerton vs. Bank of the United Kearney, 1 Peters, 613. Bank of the United States vs. Halstead, 10 Wheat. 56.
The principles and usages of law, which warrant the issuing of this writ, are clearly laid down in 1 Cranch, 168, 169: "whenever there is a right to execute an office, perform a service, or exercise a franchise, more especially if it be a matter of public concern or attended with profit, and a person is kept out of possession of such right, and has no other specific legal remedy, the court ought to assist by mandamus upon reasons of public policy to preserve peace, order and good government; this writ ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one." These are the words of the court of king's bench adopted by this. They further observe: "still to render the mandamus a proper remedy, the officer to whom it is to be directed must be one to whom such writ may be directed; and the person applying for it must be without another specific or legal remedy: both must concur. 1 Cranch, 169.
It is a prerogative writ, Comyn's Digest, tit. Mandamus A, issuing from the court of king's bench, by virtue of its general and supervising powers, 3 Burr. 1265, 1267, on motion, and for cause shown. This is a court of special jurisdiction, limited in the exercise of its powers to specified cases: it has no prerogative powers and can issue no prerogative writs: it possesses no general supervisory powers over inferior tribunals: and can in no case grant a mandamus on its inherent authority. 6 Wheaton, 600. Its implied powers are to fine for a contempt, imprison for contumacy, enforce the observance of order. 7 Cranch, 34. It may regulate process and practice, but under an authority given by law. 10 Wheat. 22, 55, 64. This then is not a court which by the principles and usages of the common law can issue a mandamus; not having a general superintending jurisdiction like the king's bench; but having no power to do it unless by express and delegated authority. In New York the supreme court has claimed this *211 power on a mandamus to an inferior court to sign a bill of exceptions; but the reason assigned is, "we have the general superintendence of all inferior courts, and are bound to enforce obedience to the statutes, and oblige subordinate courts and magistrates to do those legal acts which it is their duty to do. "The court admits, however, that so late as 1810, the application is entirely new; that no instance appears of such a writ issuing out of the king's bench, when an inferior court refused to seal a bill of exceptions; and if complaint should be made against this court or one of its judges, for refusing to seal a bill of exceptions, then the writ must, ex necessitate, come from chancery, if any where; but in no other case can it be indispensable. Sikes vs. Ransom, 6 John. Rep. 279, 280. The writ founded on and reciting the statute of Westminster the second, 13 Edward I, ch. 31, is to be found in Ruffhead, 99, 100, commanding the judges to put their seals to the exceptions, as is prescribed by the statute aforesaid, and that on periculo quod incumbit nullatores.
The writ is set forth at large in the Registrum Brevium, 182 a, title Brevia de Statuto, and was devised to enforce obedience to the statute, made out by the court of chancery: it is issued on special application, founded on the right of the crown to compel its officers to pay obedience to the statutes. It is a sort of prerogative writ, a mandatory writ. The judges to whom it is directed are supposed by the writ to have done wrong. They may obey the writ by sealing the exceptions; or they may make a special return, which must be made to the king in chancery, and can be made no where else: and in issuing the writ the court of chancery acts as much judicially as the court of king's bench does in granting a mandamus. If the judges make a false return, an action may be brought against them. 1 Sch. and Lefr. 78, 79. Lord Redesdale quashed the bill which had been issued to the court of king's bench by the decision of the court. 1 Sch. and Lefr. 75, 79.
In the Rioters' case (1 Vernon, 175), a motion was made to grant a mandatory writ to the chief justice of the king's bench, and they produced a precedent where in like cases such a writ had issued out of chancery to the judge of the sheriff's court of London; "but the lord keeper denied the motion, for that the precedent they produced was to an inferior court, and he *212 could not presume but the chief justice of England would do what should be just in the case: for possibly you may tender a bill of exceptions which has false allegations and the like, and then he is not bound to sign it, for that might be to draw him into a snare; and said if they had wrong done them they might right themselves by an action on the case."
In Bridgman vs. Holt, Show. Par. Cases, 111, a writ of error to the court of king's bench was pending in the house of lords: an order was prayed for to the judges to seal a bill of exceptions (which the court had refused at the trial), to the end that the said case might, as by law it ought, come entirely before their lordships for judgment, &c. The house ordered copies of this petition to be given to the judges, that they should put in their answers in writing. They replied by protestation and saving their rights, declaring, "so that if the pretended bill was duly tendered to these respondents, and was such as they were bound to seal, these respondents are answerable for it by the course of the common law in an action to be brought on the statute of Westminster the second, ch. 21, which ought to be tried by a jury of twelve honest and lawful men of England, by the course of the common law, and not in any other manner.
"And the respondents further show, and humbly offer to your lordships' consideration, that the petition is a complaint in the nature of an original suit, charging these respondents with a crime of a very high nature; in acting contrary to the duty of their office, and so altogether improper, for your lordships' examination or consideration, not being any more triable by your lordships than every information or action for breach of any statute law is; all which matters are by the common law, and justice of the land, of common right to be tried by a jury.
"And the petition is wholly of a new nature, and without any example or precedent, being to compel judges, who are by the law of the land to act according to their own judgments without any constraint or compulsion whatsoever, and trenches upon all mens' rights and liberties, tending manifestly to destroy all trials by jury.
"And it is further manifest that this complaint is utterly improper for your lordships' examination, for that your lordships *213 cannot apply the proper and only remedy which the law hath given the party in this case, which is by awarding damages to the party injured (if any injury be done), for these are only to be assessed by a jury. And they these respondents are so far from apprehending they have done any wrong to the petitioners in this matter, that they humbly offer, with your lordships' leave, to wave any privilege they have as assistants to this honourable house, and appear gratis to any suit which shall be brought against them in Westminster hall, touching the matter complained of.
"And they further, with all humility, offer to your lordships' consideration, that as they are judges they are under the solemn obligation of an oath to do justice (without respect to persons), and are to be supposed to have acted in this matter with and under a due regard to that sacred obligation; and therefore to impose any thing contrary upon them may endanger the breaking of it, which they humbly believe your lordships will be tender of.
"And they further humbly show to your lordships, that by a statute made in 25 Edward III. ch. 4, it is enacted, that from thenceforth none shall be taken by petition or suggestion to the king or his council, unless by indictment or presentment of good and lawful people of the neighbourhood, or by process by writ original, at common law; and that none shall be put out of his franchise or freehold, but by the course of the common law. And by another statute in the twenty-eighth of Edw. III. ch. 4, it is expressly provided that no man shall be put out of his lands or tenements, or imprisoned or disinherited, but by due process at law. And by another statute, made in the forty-second Edw. III. ch. 3, it is enacted, that no man shall be put to answer without presentment before justices, or matters of record on due process and original writ, according to the old law of the land.
"And the respondents further say that inasmuch as the petition is a complaint in the nature of an original cause for a supposed breach of an act of parliament, which breach (if any be) is only examinable and triable by the course of the common law, and cannot be in any other manner; and is in the example of it dangerous to the rights and liberties of all men, and tends to the subversion of all trials by jury; these respondents *214 consider themselves bound in duty (with regard to their offices, and in conscience to the oaths they have taken), to crave the benefit of defending themselves touching the matter complained of by the petitioners, by the due and known course of the common law; and to rely upon the aforesaid statutes, and the common right they have of free born people of England, in bar of the petitioners' any further proceeding upon the said petition, and humbly pray to be dismissed from the same."
This is the language of the judges of the court of king's bench to the highest court in England. I believe it to be in the true spirit of the principles and usages of the common law. It was boldly held to a court composed of the aristocracy, the clergy, the judges of the common pleas, and barons of the exchequer; in which the lord chancellor presides. It was mainly defiance of their power, and fearless appeal to their common right as free born people of England, the common law, the guardian mother of liberty wherever adopted.
The counsel for the application did not controvert a principle asserted by the judges, and did not show a precedent: the house of lords did not grant the writ, and the case ends with four blank lines containing, "and afterwards * * * * * * The blank would have been filled up, if in so solemn a contest the arm of power had prostrated the law of the land.
The principles of the judges are a part of that great system which our ancestors introduced, and on which our best institutions are built. They are in my opinion a part of the common law of every state and of every common law court, state or federal, safe guides to the highest, or its component members sitting in a circuit court. The judges of king's bench humbly offered to their lordships' consideration, that they acted under oath, the breaking of which might be endangered, if they obeyed their order. If this court asserts and exercises this power by directing writs of mandamus to every court, over which they have appellate jurisdiction, an answer might a second time be entered on our records, in terms of protestation; not offered in all humility to our consideration, whether the breaking of their oaths should be endangered by obeying: we might expect disobedience to the *215 writ, and contempt of powerless, defied jurisdiction. I hope never to see the judges of the highest court in a republic afraid, when their judgment tells them that they stand on the written constitution, and law of the nation, and their duty is called into action on a proper occasion, to assert and maintain those great principles of jurisprudence avowed in the highest court in a monarchy, by judges of a subordinate one, under a constitution unwritten, and which could give no control to a legislative power, which was omnipotent. The right of disobedience to a writ from a superior court to an inferior one, is not alone to be found in the courts of a foreign country. That it may and ought to be exercised by a district court of the United States, to a writ from the circuit court, which they have no power to issue, has received the deliberate sanction of this court. "The court deem it proper to take some notice of the mode of proceeding, for removing this case from the district to the circuit court: it is believed to be novel in the practice of the court of the United States, and it certainly wants the authority of law to sanction it. There is no act of congress which authorizes a circuit court to issue a compulsory process to the district court, for the removal of a cause from their jurisdiction, before a final judgment or decree is pronounced. The district court therefore might, and ought to have refused obedience to the writ of certiorari issued in this case by the circuit court; and either party might have moved the court for a procedendo, after the transcript of the record was removed into the circuit court, or might have pursued the cause in the district court, in like manner as if the record had not been removed." Patterson vs. The United States, 2 Wheat. 225, 226: opinion of the court delivered by Mr Justice Washington.
The circuit court have unquestioned appellate jurisdiction over the district court. The fourteenth section of the judiciary act authorizes all the courts of the United States to issue all other writs not specially provided for by statute, which may be necessary for the exercise of their respective jurisdiction, agreeably to the principles and usages of law. The writ of certiorari is not specially provided for by any statute; it is a common law writ issued by all superior appellate courts to inferior ones, and by them to magistrates; *216 it is the peculiar and appropriate process for ordering a record or proceeding to be certified to a superior tribunal. But being novel in practice, authorized by no act of congress, it ought to be resisted, it was a nullity. The record though removed in fact to the circuit, remained in the district in law, and their power to hear and determine it remained as full as before the writ was obeyed. It is not necessary for me to make a detailed application of that case to this; it applies to all cases where process is applied for to a court which has no power to issue it. In a new case the rule laid down by the chancellor in 1 Vern. 170, is a sound and safe one: "but the lord keeper told him that though he had the custody of the great seal, yet he would make no use thereof, but according to the course for the court."
Questions of jurisdiction and power ought neither to be sought nor avoided; a great one has arisen in a very small case, but such cases generally lead to the development of the mighty principles which subvert and found governments. We are asked to issue a mandamus to the circuit court of New York, under circumstances which would not justify one to a county court. This part of the case was very properly submitted without argument, and if the application could have been rejected on its merits, without jurisdiction to hear and determine, "oyer and terminer," the merits, and to refuse or issue the writ according to the justice and law of the case, I should have required no consideration: but as the existence of jurisdiction must precede its exercise, I have been forced to the investigation of this case, which, simple as it is on the merits, necessarily involves principles which are the foundation and corner-stones of the judicial department of this government.
I am abundantly satisfied that the judicial power does not extend to this case; that the constitution and acts of congress do not authorize a mandamus from this to a circuit court to sign a bill of exceptions; that it is warranted by no principle or usage of law, either the common law of this country or of England; that the issuing of it is neither an exercise of appellate jurisdiction under the thirteenth, nor necessary to the exercise of the jurisdiction of this court, within the provisions of the fourteenth section of the judiciary act; that *217 if the writ can be issued at all, it is specially provided by statute, and can in no case issue from this court, as called for by this motion, agreeably to the principles and usages of law. This court have repeatedly decided, that this means the common law of England, as administered in her courts of law and equity. In tracing their course since the adoption of the statute of Westminster in 1285, I find, that the court of king's bench, the only court in the kingdom which by virtue of its high general prerogative and superintending jurisdiction can issue the high prerogative writ of mandamus to any court of record, has never issued one to sign a bill of exceptions: that such a writ is not an exercise of appellate jurisdiction, or necessary to it, but of original inherent power: that the power to issue it to the court of king's bench was solemnly denied to the highest appellate court in England: that the mandatory and kind of prerogative writ, which has been devised and founded on the statute of Westminster, as the only process by which its provisions are enforced, issues from the king in chancery, on application to the keeper of his conscience: and that the high court of chancery has no appellate jurisdiction over any court of record: that the writ when issued is not in virtue of appellate jurisdiction in that court, or as necessary to its exercise. These are the only cases in which, according to the solemn opinion of this court in Marbury vs. Madison, it can issue the writ; thus adjudging and declaring that the union of the legislative and judicial power of this government was incompetent to authorize one to the secretary of state; in a case appropriate for its exercise, and warranted by the principles and usages of the common law, as defined by Blackstone and Lord Mansfield, and adopted by this court. In the absence of a solitary precedent in England since the 13 Edw. I. or in this court from its first organization, although this statute forms a part of the law of every state court of record, and of the federal courts in civil cases, which come here for revision; I am constrained to withhold my assent to the exercise of any power over the subject matter of this motion. It seems to me to be as inconsistent with our own decisions, as with the principles and usages of the common law.
There is another objection to the exercise of this power in this case equally fatal. Two things must concur to authorise *218 a mandamus. The officer to whom it is directed, must be one to whom on legal principles such writ can be issued: and the person applying for it must be without any other specific or legal remedy. The cases referred to clearly negative the first requisite. It cannot be issued to a judge of the highest court in the land; to a judge of an inferior court to perform a judicial act, or compel him to decide according to any judgment but his own; to an executive officer who may act or not according to his own discretion, or is subject to the discretion of another.
As the matter contained in the bill of exceptions forms a part of the record, the supreme court must take it as true. It admits of no contradiction by any proof. The signing of it by the circuit court is not a ministerial act; but is in its nature judicial, relating to the admission or rejection of what is offered in evidence, or matter of law given in charge to the jury or withheld by the court. An order from a superior to an inferior court to make that a part of the record which they do not feel it their duty to do, is in effect to compel them to decide by the judgment of others, and not according to their own.
The next requisite which the supreme court say is necessary is manifestly wanting. There is, by the principles and usages of the common law, a specific legal remedy provided for the very case, by a special writ from chancery, returnable before the king in chancery, reciting the mandatory parts of the statute of Westminster. Though no act of congress authorises this writ to issue from any court, there is a specific and legal remedy by an action in the statute for a false return, and a special action on the case, if the judges refuse to seal the bill of exceptions when duly taken and tendered. This abundantly appears by the writ in the register, and the opinion of lord chancellor King, in 1 Vernon; of lord Redesdale, in 1 Sch. and Lefr.; of the court of king's bench in Bridgman vs. Holt; of justice Buller in his Nisi Prius, 316; and of the supreme court of New York, in 6 Johnson: and in the absence of even a dictum to the contrary. These opinions and cases must be taken as clearly showing the law to be well settled, that these remedies are both specific and legal: the writ in the Register is alone sufficient to show this. Lord Coke declares original writs to be the foundation of the law. Preface to 8th Reports.
*219 As the absence of such remedy forms a part of the definition of the only cases in which, according to the doctrine of the court of king's bench, adopted in 1 Cranch, 168, 169. by this court, a mandamus can issue; the opinions of both coincide in declaring this not to be such a case.
It may be proper to notice some cases from which it may be inferred that these principles have not been uniformly adhered to. In The Lessee of Martha Bradstreet vs. Daniel Thomas, 4 Peters, 102, an application was made to direct a mandamus to the district judge of the northern district of New York, to sign a bill of exceptions: a rule to show cause was granted at the January term 1829, but discharged at the next term on the merits. The question of jurisdiction was not moved, and passed sub silentio; thus affording, in the language of the court in 6 Cranch, 317, and of the chief justice in 3 Cranch, 172, a sufficient answer to the supposed authority of Mrs Bradstreet's case.
The same answer applies to The United States vs. Peters, 5 Cranch, 115, 134, in which a mandamus was issued to the district judge of Pennsylvania, to order an attachment in the celebrated case of Olmstead. No objection was made to the writ; and the cause was submitted without argument, for reasons apparent in the return of the judge, who had previously rendered a final sentence. The case of Livingston vs. Dorgenois, was a writ of error to the district court of Orleans. The counsel for the appellant dismissed his writ of error without the opinion of the court having been delivered. He then prayed a writ of mandamus nisi in the nature of a procedendo, which was granted without argument or question of jurisdiction. 7 Cranch, 557, 589. The writ of procedendo to a district court is within the words of the thirteenth section of the judiciary act.
The decisions of state courts, deriving their authority from state constitutions or laws, are no test of the powers of the courts of the United States; nor have their usages or practice ever been adopted by any act of congress or rule of the supreme court, except so far as relates to the federal courts sitting within a state: but as much reliance has been placed on the case in 6 Johnson, 278, 280, I think proper to observe that the claim of the supreme court in that case was expressly *220 founded on their general controlling supervisory power over all inferior courts and tribunals under the laws of New York, placing them on the same footing as the court of king's bench in England: a power not pretended to exist in this.
If, however, this case is any authority, it is directly opposed to the power which we are now called on to exercise. If, say that court, a complaint was made against them or one of its judges, for refusing to sign a bill of exceptions, the writ must, ex necessitate, come from chancery, if any where: but in no other case can it be indispensable. If this assertion by that court of its power to issue this writ to any inferior court, for such purpose and for such reasons as they assign, is to be followed in this court as a safe guide to its powers under the constitution and laws of the United States; then we may, as representing the court of king's bench in its high prerogative character, issue a prerogative mandamus to any district court; and as representing the king in chancery, and the chancellor as the keeper of his conscience and the great seal of the kingdom, issue the special mandatory sort of writ prescribed by the statute of Westminster. Those who feel themselves invested with such authority, as part of the judicial power of the government, must exercise it; but for myself, I must disclaim it, as neither conferred by any act of congress, or the principles and usages of the common law. I do not feel justified in adopting them from any state court acting under state laws and usages; especially where that court declares the assertion of the principle to be new, more than thirty years after the federal courts were organized. Having no authority under the twenty-fifth section to revise that opinion, I am not disposed, extra-judicially, to question its authority in the state where it was pronounced: but believing it to be contrary to the best established rules and principles of the common law, as well as to the uniform construction which this court has given to the thirteenth and fourteenth sections of the judiciary act, in its general principles, I cannot adopt them. Though no one respects more than myself the adjudication of that court, yet I should be utterly wanting in that which is due to the constitution, the acts of congress, and the course of this court for more than forty years, by making a state decision the standard of our constitutional powers.
*221 I have thus searched among the fountains, and consulted the written oracles of the common law. The streams of justice which have flowed from the one have run in one unbroken current for five hundred and forty-six years, without such a mandamus as this seen floating even on the surface. The responses from the other are the voice of the law, speaking through all ages, in one unvarying tone; delivering the results of human wisdom, developed in principles, matured, digested, explained, enforced and supported during five centuries, amidst all the conflicts of party vengeance, civil war, and regal oppression.
But in reply to the question, has such a writ as this now asked for, ever formed a part of the principles or usages of the common law of England, the response through all time has been the same: it is not the lineal descendant of the venerated mother of our best institutions. I have drawn largely on the adjudications of this high tribunal; and sought in the principles established by the great men who have formed an embryo system of American jurisprudence, that will not cower before any which has required centuries to build up in Europe. There too I find no writ issued, no power asserted, to command a circuit court to seal a bill of exceptions. Without a rule to bind my faith, a decision to influence my judgment, a reason to enlighten my understanding, and without one precedent to justify me in disobeying the settled convictions of my conscience, I have a plain course to take, a plain line to guide me in the path of duty. Believing that the law of the land does not authorize this writ, that it is the exercise of a power neither inherent nor conferred; I am compelled to resist it: my judgment has been formed on the constitution and laws of the union, the common law of England, of all the states and the nation, and cannot be surrendered to human authority. I am well aware of the weight of that against which on several questions of jurisdiction, my duty has compelled me to stand alone, and may again compel me: it is against odds truly fearful, but to act against my conscience and conviction of duty would be more fearful still. Internal calm and peace of mind are too precious at my time of life to be impaired by any considerations: while all is at ease within, it little matters how the storm rages without. Judges do not *222 sit on cushions of down, while administering the supreme law of the land in this court, their constitutional powers are not like those of the other departments of the government, though the case arises which brings them into existence, their exercise is discretionary. 6 Wheat. 404. But with us, power and duty to bring it into action are inseparable: whenever a case calls for it, the call is imperative. Questions of jurisdiction are important in all governments, but most powerful in this. They must be approached with caution, and examined with deliberation; but cannot be avoided. When made by counsel or suggested by ourselves, we must examine them with the greatest assiduity; when not aided by the researches, and enlightened by the display and conflict of the talents and intelligence of the bar, and without the responsibility of even an argument, this court is called on to assert a power, which in the forty-two years of its existence it has never exercised, that power growing out of a statute under which it has never been exercised, during the more than five centuries which have elapsed since its enactment even in the country in which it was first adopted; to be exercised by a prerogative writ, which can be granted only by one high prerogative court in England, in which the king is presumed to be present, and the proceedings to be "coram domini regis ubicumque fuerimus in Angliaco;" which can issue the writ only by virtue of its great supervisory powers over all inferior courts, magistrates, officers and corporations, to force obedience to the statutes, and compel them to do those legal acts which it is their duty to do: I must follow my own judgment, and dissent in the threshold: obsta principiis  stare decisis.
The importance of the principles involved in this case, not only as they bear on the jurisdiction of this court in issuing prerogative writs to the inferior courts of the United States, but also on the appellate power conferred on them by the constitution and the twenty-fifth section of the judiciary act over the state courts, has made it a high duty to give this application a most deliberate examination. Compelled to dissent, I was bound to give my reasons, and cite the authority on which my judgment was formed. Another reason is equally imperious. Sitting here or elsewhere, it is my duty to exercise all the powers given by the constitution, which the legislation *223 of congress has authorized the court to bring into action on the cases which may properly arise, and call for their application, and to enforce the judgments and decrees of either tribunal of which I am a member, by all the process and physical means which the laws have placed at its command, and on the failure of these to apply to the executive to see that the laws are executed; I approach all questions of power and jurisdiction with caution, and shall stop in the beginning unless satisfied that the constitution and laws empower and enjoin it as a duty to proceed and finish what we can begin. Fully satisfied that on the discreet exercise of the powers of this court, much of the strength and public usefulness of the government depends, I have no fear that its judgments will ever cease to command the support and confidence of the country, while they are applied only to subjects clearly within the judicial power, according to the laws which regulate their exercise. But I do most seriously apprehend consequences of the most alarming kind by the extension of its powers by any analogy to the supreme prerogative jurisdiction of the court of king's bench or a state court, and its application to process hitherto unknown in the history of the jurisprudence of England or this court. Via trita, via tuta.
Mr Justice Johnson concurred, verbally, with Mr Justice Baldwin in the opinion, that the court had no authority to grant the mandamus as prayed for: and he was of opinion that the whole charge as delivered to the jury, by the court, should be stated in a bill of exceptions; if required by the counsel who took the exceptions.
Motion overruled, and mandamus prayed for refused.